UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| BRENT SMITH AND<br>JANICE SMITH | CIVIL ACTION NO. 12-1841 |
| versus | JUDGE TOM STAGG |
| SHREVEPORT POLICE<br>DEPARTMENT, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the Shreveport Police Department ("SPD"), the City of Shreveport ("the City"), Chief Willie Shaw ("Chief Shaw"), Officer Robert Brice ("Officer Brice"), Sergeant James Germain ("Sergeant Germain"), and Officer Shane Prothro ("Officer Prothro") (collectively "the defendants"), seeking judgment in their favor and dismissal of all claims asserted herein by Brent Smith ("Smith") and Janice Smith ("Mrs. Smith") (collectively "the plaintiffs"). See Record Document 42. For the reasons set forth herein, the defendants' motion is **GRANTED.**

## I. BACKGROUND

On July 8, 2011, at shortly after 10:00 p.m., SPD officers were dispatched to

7601 Harris Street in response to reports of a fight. See id., Statement of Material Facts at ¶ 1. The SPD had received prior calls for fights in that area over the prior two days. See id., Statement of Material Facts at ¶ 2. The 911 call on July 8 reported about fifteen people involved in the fight using sticks and mace, and one male suspect in a white t-shirt. See Record Document 47, Manual Attachment 1 at 1:00-1:30. Officers were advised that a male suspect wearing a white shirt was armed with a gun. See Record Document 42, Statement of Material Facts at ¶ 1. A copy of the dispatch audio is attached to the defendants' motion. See Record Document 42, Ex. A. Several minutes after the initial dispatch call, in response to questions from an officer, another dispatcher states the suspect with a gun was a white male in a white shirt with shorts and flip-flops. See id., Ex. A at 9:11-9:50.[1]

The plaintiffs' home was located at 7611 Harris Street. See Record Document 1 at ¶ 1. The plaintiffs allege that Smith was across the street visiting a neighbor, Emory L. Smith ("Emory"), at the time the SPD officers arrived. See id. Additionally, the plaintiffs contend that Mrs. Smith was inside their home and that two SPD officers, Officer Anisco and Officer Clark,[2] were allowed to enter the

---

[1] This exchange can also be heard on the in-car radio of Officer Clark. See Record Document 42, Ex. B, Video from Officer Marlon Clark, DVR 773 at 22:14:50–22:15:30.

[2] Neither Officer Anisco nor Officer Clark is a named defendant in the plaintiffs' complaint.

2

plaintiffs' home. See Record Document 51, Statement of Material Facts at ¶¶ 5-6. The plaintiffs claim that Smith walked over to his house after seeing Officers Anisco and Clark enter his home, that he accidentally struck Officer Clark with the door when entering, that he apologized to Officer Clark, and left his house without incident. See Record Document 1 at ¶¶ 12-13. The defendants allege that Smith was running across the street to his house when Officer Brice and Officer Prothro arrived on the scene, that Smith tried to forcibly enter his home and struck Officer Clark with the door, and that Smith became verbally resistant and defiant when told he could not enter his home. See Record Document 42, Statement of Material Facts at ¶¶ 3-5.

The plaintiffs contend that, as Smith was walking back across the street toward Emory's house and without any provocation from Smith, he was struck in his side by Officer Brice and taken to the ground by Officer Brice and another officer. See Record Document 1 at ¶ 14. The defendants argue that officers chose to detain Smith because of his suspicious behavior and the similarity between his clothing and that of the suspect believed to have a gun. See Record Document 42, Statement of Material Facts at ¶ 6. Moreover, the defendants claim that Smith refused to comply with orders from Officer Holden,[3] that Smith resisted when Officer Holden attempted to detain him, and that Officer Brice had to assist in bringing Smith to the ground.

---

[3] Officer Holden is not a named defendant in the plaintiffs' complaint.

3

See id., Statement of Material Facts at ¶¶ 7-9. The defendants argue that Smith refused to give up his right arm and that Officer Brice delivered multiple distraction strikes to get Smith to give up his right arm because he thought Smith might be armed. See id., Statement of Material Facts at ¶¶ 10-11.

The plaintiffs claim that Smith suffered broken ribs as a result of the defendants' actions. See Record Document 1 at ¶ 16. The defendants argue the only use of force by Officer Brice was the distraction strikes, which were only used because Smith was resisting the officers. See Record Document 42, Statement of Material Facts at ¶ 16. Moreover, the defendants contend that Officer Prothro did not deliver any distraction strikes to Smith, and further that Sergeant Germain arrived after Smith was arrested and did not use any force against Smith. See id., Statement of Material Facts at ¶¶13-14. The defendants further assert that Smith was charged with resisting an officer in violation of Louisiana Revised Statutes section 14:108, that Smith entered into a pre-trial diversion agreement for a term of probation, and the charge against him was ultimately nolle prossed. See id. at ¶ 15; Ex. G. The plaintiffs do not contest the facts that Smith was charged with resisting an officer, entered into a pre-trial diversion agreement, and the charge was nolle prossed. See Record Document 51, Statement of Material Facts.[4] Therefore, for purposes of the

---

[4] In their opposition memorandum, the plaintiffs state they "DENY all allegations and purported positions taken by the Defendants in their motion." Record

instant motion, these facts are deemed admitted. See Local Rule 56.2.

The plaintiffs filed the instant lawsuit on July 5, 2012. See Record Document 1. Their complaint alleges causes of action under both federal and state law. See id. Defendant Chief Shaw is being sued in his official capacity only, while the other individual defendants—Officer Brice, Officer Prothro, and Sergeant Germain—are sued in both their individual and official capacities. See id. at ¶¶ 8-9. The defendants filed the instant motion for summary judgment on March 21, 2014. See Record Document 42. The plaintiffs opposed the defendants motion and the defendants filed a reply brief in support of their motion. See Record Documents 51 and 52.

## II. LAW AND ANALYSIS

**A.      Summary Judgment Standard.**

Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

> (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

---

Document 51. This is not sufficient under Local Rule 56.2 to controvert the statement of material facts submitted by the defendants in support of their motion.

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.    The Plaintiffs' Claims Are Barred By Heck v. Humphrey.**

The defendants contend that the plaintiffs' claims are barred as a matter of law under Heck v. Humphrey. In Heck, the plaintiff was convicted of voluntary manslaughter in state court. While his direct appeal was pending in the state courts, the plaintiff filed a section 1983 claim alleging that his arrest was unlawful. The Supreme Court ultimately affirmed dismissal of the plaintiff's complaint, holding that a section 1983 claim is not proper if a favorable judgment for the plaintiff "would

necessarily imply the invalidity of his conviction or sentence . . . ." Heck, 512 U.S. 477, 487, 114 S. Ct. 2364, 2372 (1994). Specifically, the Court held that if a plaintiff's civil lawsuit would impugn the validity of an underlying conviction, the plaintiff must show that the conviction has already been reversed or invalidated by a state or federal court. See id. at 486-87, 114 S. Ct. at 2372. The Heck rule is intended to prevent challenges to valid criminal judgments through civil tort actions. See id. at 486, 114 S. Ct. at 2372. "The rationale behind Heck is that a successful [section] 1983 suit would imply the invalidity of the criminal conviction and lead to inconsistent results." Clay v. Allen, 242 F.3d 679, 680 (5th Cir. 2001).

The Heck rule has been extended to include excessive force claims, depending on the nature of the offense and the claim. See Arnold v. Town of Slaughter, 100 F. App'x 321, 323 (5th Cir. 2004). The plaintiff in a civil suit need not have been convicted for the Heck rule to apply. Most relevant to this case, the Heck rule applies when the civil plaintiff entered into a pre-trial diversion agreement in the underlying criminal proceeding. See Elphage v. Gautreaux, 969 F. Supp. 2d 493 (M.D. La. 2013); Bates v. McKenna, No. 11-1395, 2012 WL 3309381 (W.D. La. Aug. 13, 2012). A pre-trial diversion agreement is "an alternative to prosecution that diverts certain offenders from traditional criminal justice processing into a program of supervision." Taylor v Gregg, 36 F.3d 453, 455 (5th Cir. 1994). Persons who enter

into pre-trial diversion agreements "must acknowledge responsibility for their actions, but need not admit guilt." Id.

Both Elphage and Bates rely on Taylor v. Gregg, a Fifth Circuit case decided prior to Heck. In Taylor, the plaintiffs were arrested and indicted by a federal grand jury on a charge of interference with a flight crew. Both plaintiffs entered into a pre-trial diversion agreement, and both subsequently filed suit against the arresting officer and his employer, the city of Lubbock, alleging malicious prosecution and false arrest claims under section 1983 as well as state tort claims. See id. at 455-57. Noting that the plaintiffs were required to show the underlying criminal action was terminated in their favor, the court held that entering into a pre-trial diversion agreement precluded the plaintiffs from bringing a section 1983 claim. See id. at 455-56. The court's holding was based, in part, on public policy concerns. Specifically, the court observed that prosecutors might be less willing to enter into pre-trial diversion agreements if defendants could subsequently file suit under section 1983. See id. at 456.

This court applied Taylor's reasoning in the context of Heck in Bates. The plaintiff was charged with interference with a police officer and resisting an officer, and he entered into a pre-trial diversion agreement and the charges against him were nolle prossed. See Bates, 2012 WL 3309381 at *3. The plaintiff subsequently

8

brought a section 1983 claim alleging false arrest and excessive force actions under federal and Louisiana state law. See id. at *1. The court granted summary judgment to the defendants and dismissed the plaintiff's claims, under federal and Louisiana state law, holding that voluntary participation in a pre-trial diversion program precludes a subsequent civil action under section 1983. See id. at *5-*7. In a similar case, the United States District Court for the Middle District of Louisiana held that a plaintiff's section 1983 claim for wrongful arrest was barred as a matter of law because she was charged with resisting an officer and entered into a pre-trial intervention program. See Elphage, 969 F. Supp. 2d at 507-08. The court specifically noted that allowing similarly situated plaintiffs to bring section 1983 claims would make prosecutors less willing to enter into pre-trial intervention programs. See id. at 508.

In the instant case, Smith was charged with resisting an officer in violation of Louisiana Revised Statutes section 14:108. See Record Document 42, Statement of Material Facts at ¶ 15; Ex. G. Thereafter, Smith entered into a pre-trial diversion agreement for a period of probation, and the charge against him was nolle prossed. See id. Like the plaintiffs in Bates and Elphage, Smith has subsequently brought a section 1983 claim arising from the very incident that formed the basis for the charge of resisting an officer. See Record Document 1. The plaintiffs do not dispute any of

these points in their four-page opposition memorandum.[5] Moreover, the plaintiffs' opposition does not present any legal arguments, but rather argues only that there are genuine issues of material fact as to whether the primary suspect was a black male or white male and whether the defendants acted dishonestly and fraudulently during the investigation. See Record Document 51. Neither of these purported facts is material in light of the clearly established legal arguments presented in the defendants' motion.

Under the Heck rule, Smith's section 1983 claims are barred as a matter of law because of his voluntary participation in a pre-trial diversion program in the underlying criminal action against him. Similarly, Smith's state law claims are barred on the same grounds because they would also attack the validity of the pre-trial

---

[5] Despite submitting a four-page opposition memorandum, the plaintiffs submitted six exhibits totaling almost two hundred pages as well as five manually attached audio exhibits, yet did not cite to any of them specifically. The court notes that district courts have a "limited and neutral role in the adversarial process" and should be not become advocates who comb through the record and make a party's case. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). According to the Fifth Circuit, "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." Ragas v. Tenn. Gas & Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Id. In fact, section (c) of Rule 56 specifically requires the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Though it should be obvious and has been stated by courts before, "judges are not like pigs, hunting for truffles buried in briefs." De la O v. Housing Auth. of City of El Paso, Tex., 417 F.3d 495, 501 (5th Cir. 2005) (citations and quotations omitted).

diversion agreement. See Elphage, 969 F. Supp. 2d at 515; Bates, 2012 WL 3309381 at *7. Therefore, the defendant's motion for summary judgment is **GRANTED** and all of the plaintiffs' claims against the defendants are **dismissed.**[6]

### III. CONCLUSION

For the reasons discussed herein, the defendants' motion for summary judgment (Record Document 42) is **GRANTED,** and all claims asserted by the plaintiffs are **DISMISSED WITH PREJUDICE.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 5th day of June, 2014.

JUDGE TOM STAGG

---

[6] Because the court is granting summary judgment on other grounds, the court does not reach the questions of whether the defendants are entitled to qualified immunity, whether the plaintiffs can establish a policy or custom of the City, and whether excessive force was used.